# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

Melissa K. Adcox,

        **Plaintiff,**

v.                                     **Case No. 15-cv-9258-JWL**

Megan Brennan, Postmaster General,
United States Postal Service,

        **Defendant.**

## MEMORANDUM & ORDER

Plaintiff Melissa K. Adcox is a rural carrier for the United States Postal Service. In this lawsuit, she alleges claims of gender-based disparate treatment; gender-based hostile work environment; and retaliatory hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., all arising from the conduct of the customer service manager of the post office where she is employed. This matter is presently before the court on defendant's motion for summary judgment on plaintiff's claims (doc. 60). As will be explained, the motion is granted in part and denied in part.

## I.    Facts

The following facts are uncontroverted, stipulated in the pretrial order, or related in the light most favorable to plaintiff as the nonmoving party. In 2003, plaintiff began her employment with the United States Postal Service as a rural carrier associate at the Wyandotte West post office in Kansas City, Kansas. She remains employed at that office today as a rural

carrier. The first several years of plaintiff's employment passed without incident. In March 2010, Randy McHenry, who had a lengthy career with the Postal Service, came to the Wyandotte West post office as the customer service manager responsible for day-to-day operations in the office. The record reflects that plaintiff and Mr. McHenry harbored a mutual dislike for one another.

On October 1, 2010, plaintiff initiated an EEO complaint against Mr. McHenry, who became aware of that complaint sometime that fall. In that complaint, which was filed in January 2011, plaintiff alleged that Mr. McHenry, on one occasion, had discriminated against her based on her gender. Plaintiff contends that, after she initiated her EEO complaint, Mr. McHenry began a campaign of harassment against her. The record, viewed in the light most favorable to plaintiff, reflects nearly 60 separate "incidents" of alleged harassment by Mr. McHenry. Plaintiff asserts, for example, that Mr. McHenry engaged in "job discussions" or "pre-disciplinary interviews" with her about unexcused absences, misdeliveries of the mail, mail delivery delays, "time wasting practices," running a stop sign, parking on unsafe roads, leaving the office during break time, and talking to other carriers while loading her vehicle.[1] She further asserts that Mr. McHenry required her to deliver 550 double-wrapped phone books in one day along with her regular load but permitted all other carriers to deliver those books over the course of 3 days. She asserts that Mr. McHenry moved the start time for rural carriers from 7:30am to 8:00am during the hottest week of the year; that he denied her request for annual leave despite

---

[1] A job discussion or pre-disciplinary interview is not part of the postal service's progressive discipline policy and has no bearing on an employee's pay, job status or benefits. The record does not reflect whether documentation of a job discussion or pre-disciplinary interview is placed in the employee's personnel file.

the fact that her request was made before any other employee's request; that he required her to submit medical documentation of the need for sick leave; that he announced to everyone on the workroom floor that plaintiff was "AWOL" when she called in sick; that he refused to let plaintiff (and other carriers) eat lunch at a certain restaurant; that he issued plaintiff a 7-day "paper" suspension when plaintiff left work without permission;[2] and that he followed and/or observed plaintiff on her route far more than he observed any other carrier. In the midst of these incidents and based on many of these incidents, plaintiff initiated a second EEO complaint in January 2012. Mr. McHenry learned about that complaint in March 2012 and it was filed in May 2012. According to plaintiff, Mr. McHenry engaged in a pattern of harassment—including the types of incidents described above—from February 2011 through October 2012. Mr. McHenry retired from the postal service in January 2017.

Additional facts will be provided as they relate to the specific arguments raised by the parties in their submissions.


## II.    Summary Judgment Standard

"Summary judgment is appropriate if the pleadings, depositions, other discovery materials, and affidavits demonstrate the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Water Pik, Inc. v. Med–Systems, Inc*., 726 F.3d 1136, 1143 (10th Cir. 2013) (quotation omitted); *see* Fed. R. Civ. P. 56(a). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Water Pik, Inc*., 726 F.3d at 1143 (quotation omitted). "The nonmoving

---

[2] A "paper" suspension did not result in any loss of pay or loss of time on the job.

party is entitled to all reasonable inferences from the record; but if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Id*. at 1143-44.

## III. Disparate Treatment Claims

In the pretrial order, plaintiff asserts that she suffered gender-based disparate treatment between March 2011 and September 2012. To establish a disparate treatment claim, a plaintiff must present evidence that he or she suffered an adverse employment action. *See Luster v. Vilsack*, 667 F.3d 1089, 1095 (10th Cir. 2011). But plaintiff fails to identify in the pretrial order any specific discrete acts of discrimination or adverse employment actions that she suffered; she alleges only that she was subjected to adverse "working conditions." Moreover, plaintiff's factual contentions in the pretrial order relate solely to her hostile environment claims. Construing any "disparate treatment" claims to be entirely duplicative of plaintiff's gender-based hostile work environment claim, then, defendant's motion for summary judgment mentions any gender-based disparate treatment claims only in passing. Specifically, defendant contends that the events that form the basis of plaintiff's gender-based hostile work environment claim would not survive summary judgment "if [plaintiff] asserted them as discrete claims." In her response, then, plaintiff suggests that summary judgment on her disparate treatment claims must be denied because defendant has not moved for summary judgment in the first instance and, in any event, because the record contains factual issues that preclude summary judgment on

the merits.  The court disagrees and grants summary judgment on plaintiff's gender-based disparate treatment claims.

The fact that defendant has not moved for summary judgment on plaintiff's disparate treatment claims does not mandate that those claims survive summary judgment.  As highlighted by defendant in her reply brief, the pretrial order fails to set forth a claim of gender-based disparate treatment that is separate and distinct from plaintiff's gender-based hostile work environment claim.  No discrete acts of discrimination are identified in the pretrial order and no damages stemming from any discrete acts are claimed.  In the "factual contentions" portion of the pretrial order, plaintiff describes only her hostile work environment claims.  Thus, any gender-based disparate treatment claim asserted by plaintiff has been waived.  *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002) (claims or theories not included in the pretrial order are waived).

In any event, summary judgment is also appropriate because a viable claim of disparate treatment must be predicated on an adverse employment action.  *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1039-40 (10th Cir. 2011).  In general, only acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits will rise to the level of an adverse employment action.  *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1222 (10th Cir. 2006).  However, the phrase "adverse employment action" is not necessarily "limited to such acts." *Hillig v. Rumsfeld*, 381 F.3d 1028, 1033 (10th Cir. 2004). The Circuit has held, for example, that an action that causes harm to future employment prospects may rise to the level of an adverse employment action.  *Id*. at 1032 (citing *Berry v.*

*Stevinson Chevrolet*, 74 F.3d 980, 986 (10th Cir. 1996)). But "a mere inconvenience or an alteration of job responsibilities" does not constitute an "adverse employment action." *C.R. England*, 644 F.3d at 1042-43. Accordingly, plaintiff must show that the alleged adverse action caused more than "de minimis harm" to or a "de minimis impact" upon an employee's job opportunities or status. *Hillig*, 381 F.3d at 1033.

In an effort to establish that she suffered one or more adverse employment actions for purposes of her disparate treatment claims, plaintiff contends that Mr. McHenry regularly interrupted her work; interrupted her breaks; followed her "making gagging noises" on one occasion; and threw mail at her on two occasions.[3] None of these acts rises to the level of an "adverse employment action" as that phrase has been construed by the Circuit. There is no evidence that any of these acts had any bearing whatsoever on plaintiff's job status or job opportunities and plaintiff does not suggest otherwise. Plaintiff asserts only that Mr. McHenry's conduct "affected her ability to have a normal work experience" which, of course, is not the appropriate standard for analyzing whether an adverse employment action has occurred.[4] While plaintiff also contends that she received "lopsided discipline," plaintiff does not contend that any of the job discussions, pre-disciplinary interviews, Letters of Warning or "paper" suspensions

---

[3] Plaintiff seems to suggest that a hostile work environment can constitute an adverse employment action for purposes of a gender-based disparate treatment claim, but she fails to explain how such a claim would be distinguishable from the gender-based hostile work environment claim separately alleged in the pretrial order.

[4] In fact, in support of her assertion, plaintiff cites only to the Supreme Court's decision in *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993). But that case addressed a hostile work environment claim and not a disparate treatment claim. Plaintiff's reliance on that case is further evidence to the court that she does not intend to assert a disparate treatment claim separate and apart from her hostile work environment claim.

that she received had any impact on her pay, benefits, job status or job prospects.[5]   In the absence of such evidence, plaintiff cannot establish that any discipline she received constituted an "adverse employment action." *See Medina v. Income Support Div., State of New Mexico*, 413 F.3d 1131, 1137 (10th Cir. 2005) (warning letter did not constitute adverse employment action where letter did not adversely affect the terms or conditions of the plaintiff's employment; letter did not affect the likelihood that the plaintiff would be terminated, did not undermine the plaintiff's current position and did not affect the plaintiff's future employment opportunities). Summary judgment on plaintiff's gender-based disparate treatment claims is required.

## IV.    Gender-Based Hostile Work Environment

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1). The "Supreme Court has held that this language is not limited to 'economic' or 'tangible' discrimination, but instead is broad enough to protect individuals from working in a discriminatorily hostile or abusive environment." *Bird v. West Valley City*, 832 F.3d 1188, 1205 (10th Cir. 2016) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986) and *Harris v. Forklift Sys., Inc.*, 510

---

[5] To the extent evidence exists in the record that could show that a high number of disciplinary write-ups could affect an employee's ability to transfer to another USPS facility, plaintiff does not raise that argument or use that evidence to attempt to show that she suffered an adverse employment action.  The court, then, does not consider that evidence.  *See Bird v. West Valley City*, 832 F.3d 1188, 1206 n.8 (10th Cir. 2016) (refusing to consider other evidence in the record that could show gender-based harassment where plaintiff had not relied on that evidence in an attempt to prove her claim).  Moreover, plaintiff does not suggest that she was ever denied a transfer she desired.

U.S. 17, 21 (1993)).  To prevail on her hostile work environment claim, plaintiff must "show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment."  *Id.* (quoting *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007)).  Severity and pervasiveness, however, are not enough; plaintiff must demonstrate "severe and pervasive harassment based on gender."  *Id.* (citing *Chavez v. New Mexico*, 397 F.3d 826, 833 (10th Cir. 2005)).  Defendant urges that summary judgment is appropriate because the conduct about which plaintiff complains is not "based on gender" and, in any event, is not sufficiently severe or pervasive to alter plaintiff's working environment.  Because the evidence in the record does not establish that Mr. McHenry's alleged abusive conduct was based on gender, the court declines to address whether that conduct was sufficiently severe or pervasive to alter the conditions of plaintiff's employment.

In support of her gender-based hostile work environment claim, plaintiff directs the court to nearly 60 separate "incidents" of alleged harassment by Mr. McHenry.  On its face, the vast majority of that conduct was undisputedly gender-neutral.  Plaintiff asserts, for example, that Mr. McHenry engaged in "job discussions" or "pre-disciplinary interviews" with her about unexcused absences, misdeliveries, delivery delays, "time wasting practices," running a stop sign, parking on unsafe roads, leaving the office during break time, and talking to other carriers while loading her vehicle.  She further asserts that Mr. McHenry required her to deliver 550 double-wrapped phone books in one day along with her regular load but permitted all other carriers to deliver those books over the course of 3 days.  She asserts that Mr. McHenry moved

the start time for rural carriers from 7:30am to 8:00am during the hottest week of the year; that he denied her request for annual leave; that he required her to submit medical documentation of the need for sick leave; that he announced to everyone on the workroom floor that plaintiff was "AWOL" when she called in sick; that he refused to let plaintiff (and other carriers) eat lunch at a certain restaurant; that he issued plaintiff a 7-day "paper" suspension when plaintiff left work without permission;[6] and that he followed and/or observed plaintiff on her route far more than he observed any other carrier. None of these allegations of mistreatment are sexual in nature or appear to be in any way related to plaintiff's gender. *See Unal v. Los Alamos Pub. Schs.*, 638 Fed. Appx. 729, 738 (10th Cir. Jan. 29, 2016) (evidence of "facially neutral" conduct included supervisor's soliciting negative feedback about employee, entering classroom unannounced and failing to include employee in certain communications); *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 682-83 (10th Cir. 2007) (evidence of facially neutral conduct included supervisor's enforcement of company policies more strictly against plaintiff than other employees); *Chavez v. New Mexico*, 397 F.3d 826, 834-35 (10th Cir. 2005) (gender-neutral conduct included assigning tasks outside job description, criticizing work for minor issues, holding plaintiff's work to a higher standard than male counterparts and issuing unsubstantiated letters of reprimand).

But the fact that nearly all of her evidence of alleged abuse is gender-neutral "merely pins her claim against the ropes instead of delivering the knockout punch." *Bird*, 832 F.3d at 1205-

---

[6] Plaintiff suggests that this conduct was overtly gender-based because plaintiff left work to purchase feminine hygiene products. It is undisputed, however, that Mr. McHenry had no knowledge that plaintiff had left work for that purpose. At best, then, the conduct is gender-neutral.

06.  For the Tenth Circuit has held that "[f]acially neutral abusive conduct can support a finding of gender animus sufficient to sustain a hostile work environment claim when that conduct is viewed in the context of other, overtly gender-discriminatory conduct." *Id.* (quoting *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1097 (10th Cir. 1999) and citing *Chavez*, 397 F.3d at 833 ("The question then becomes whether [p]laintiffs can use a substantial amount of arguably gender-neutral harassment to bolster a smaller amount of gender-based conduct on summary judgment. Our precedents say that they can.")).  In her submissions, plaintiff directs the court to only the following evidence to establish that Mr. McHenry's conduct was based on gender:  (1) Thomas Plank, plaintiff's former union steward, testified that Mr. McHenry, on two occasions, said to him something to the effect of "women in this office just don't get it"; (2) Mr. Plank testified to his belief that Mr. McHenry used "intimidating tactics" on female employees; (3) Kelly McCartney, the State President for the National Association of Postal Supervisors for Kansas,[7] testified that she assisted two female employees who had filed EEO complaints against Mr. McHenry and that those women had each alleged that they feared Mr. McHenry and that he had acted in an "assertive" and "aggressive" manner towards them; (4) Ms. McCartney testified to her belief that Mr. McHenry "has a disproportionate animosity toward women"; (5) Ms. McCartney testified that female employees had told her that Mr. McHenry "gives them the creeps"; and (6) Mr. McHenry intentionally and incorrectly marked that there were "69" pieces

---

[7] As explained by Ms. McCartney, the National Organization of Postal Supervisors is not a union but a management organization.  Ms. McCartney represents members in the organization when those members are "having issues with their management staff or it they have disciplinary actions filed against them or if they file an EEO against a management staff."

of mail in two of plaintiff's "flat mail" tubs during a mail count. Taken individually and together, this evidence is insufficient to sustain a hostile work environment claim.

Mr. Plank's testimony does not create a factual dispute on whether Mr. McHenry's conduct was based on plaintiff's gender. While the evidence that Mr. McHenry, on two occasions, stated that "women in this office just don't get it" is clearly gender-based, there is no evidence that plaintiff was aware that Mr. McHenry made such a statement until she conducted discovery in this case. "Without evidence indicating plaintiff was aware of Mr. [McHenry's] statements before the litigation, she cannot use them to demonstrate her subjective perception of an abusive environment based on gender." *Bird*, 832 F.3d at 1207. Mr. Plank's testimony that Mr. McHenry used "intimidation tactics" on female employees is vague, conclusory and devoid of any specific instances of gender-based conduct on which Mr. Plank's perception might be based. Plaintiff, then, cannot withstand summary judgment based on Mr. Plank's testimony. *Id.* (conclusory statements and generalizations unsupported by specific examples of gender-based conduct cannot create a factual issue).

Similarly, Ms. McCartney's testimony fails to create a factual dispute with respect to whether Mr. McHenry's conduct was based on plaintiff's gender. Her testimony that Mr. Henry demonstrated a "disproportionate animosity" toward women in the workplace falls flat because, like Mr. Plank's testimony about Mr. McHenry's "intimidation tactics," it is simply too vague and conclusory to defeat summary judgment. Other than her own experience (which plaintiff did not know about until this litigation), Ms. McCartney provides no concrete examples of any conduct on the part of Mr. McHenry that demonstrates a particular animosity toward women. Her testimony that two other female employees filed EEO complaints against Mr. McHenry and

that female employees have told her that Mr. McHenry "gives them the creeps" cannot save plaintiff's claim because there is no evidence that plaintiff, during the time period in which she was allegedly subjected to a hostile work environment based on gender, had any knowledge of Mr. McHenry's conduct toward these female employees (or, for that matter, even knew these employees). *See id*.; *Tademy v. Union Pacific Corp*., 614 F.3d 1132, 1146 (10th Cir. 2008) (evidence of harassment of other individuals may be considered in evaluating a claim so long as the plaintiff presents evidence that she knew about the offending behavior).

The court turns, then, to plaintiff's evidence concerning Mr. McHenry's miscount of plaintiff's mail in September 2012. According to plaintiff, Mr. McHenry, on a day when plaintiff was not scheduled to work and at a time when plaintiff was not in the facility, counted the mail in plaintiff's "flat mail" tubs and intentionally and incorrectly marked (with a handwritten notation that he initialed) two of those tubs as having "69" pieces of mail each. Plaintiff believes that Mr. McHenry's use of the number "69" was a purposeful sexual reference. When plaintiff came to work later that day to count her mail (as rural carriers frequently did), she discovered the notations on the tubs, disputed the mail count and the count was corrected by another supervisor. Although Mr. McHenry disputes that he used that number for any reason other than he actually counted 69 pieces of flat mail in the two tubs, the court assumes for purposes of the motion that Mr. McHenry intended the number in the manner plaintiff suggests (as a sexual reference) and that he did not actually count 69 pieces of flat mail in the two tubs.

Nonetheless, the evidence is not sufficient to permit a jury to conclude that plaintiff was subjected to a hostile environment based on her gender. The nature of that one arguably gender-based incident is markedly different (juvenile and non-work-related) than the nature of the

gender-neutral incidents challenged by plaintiff (work-related). Thus, no reasonable jury could infer from the one gender-based incident that the rest of the conduct challenged by plaintiff was based on her gender. Plaintiff is left, then, with one gender-based incident that was neither serious nor egregious. *See Bird*, 832 F.3d at 1205 (a few isolated incidents of gender-based abuse generally cannot establish a hostile work environment). In sum, after carefully considering plaintiff's evidence concerning the alleged conduct, the totality of the circumstances, and the applicable standard for analyzing a sexual harassment claim, the court concludes that plaintiff has not made a sufficient showing to withstand summary judgment on this claim. Accordingly, the court grants defendant's motion for summary judgment on this claim.

## V.      Retaliatory Hostile Work Environment

For her final claim, plaintiff asserts that Mr. McHenry, in retaliation for plaintiff's pursuit of EEO activity, engaged in a campaign of harassment against her intended to punish her for that activity. While the Tenth Circuit may not have formally recognized a claim for retaliatory harassment, *Kline v. Utah Anti-Discrimination and Labor Div.*, 418 Fed. Appx. 774, 780 n.2 (10th Cir. 2011) (suggesting that the Circuit has not "formally recognized" a hostile work environment claim based on retaliation), defendant does not dispute that such a claim is viable in this Circuit. *See Somoza v. Univ. of Denver*, 513 F.3d 1206, 1212 (10th Cir. 2008) (co-worker hostility and diminishing decision-making authority, if pervasive enough, may in fact rise to the level of a materially adverse action sufficient to satisfy the second prong of a retaliation claim); *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1264 (10th Cir. 1998) ("Under our circuit

13

precedent we believe that . . . retaliatory harassment, if sufficiently severe, may constitute 'adverse employment action' for purposes of a retaliation claim.").

However, the parties dispute the standard that the court should apply in analyzing plaintiff's claim. Defendant urges that the court must apply a traditional "hostile work environment" standard (rather than the *McDonnell Douglas* framework) that requires plaintiff to establish that the workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." Moreover, in light of the Supreme Court's decision in *Nassar*, defendant contends that plaintiff must also establish that her protected activity was a "but for" cause of the harassment. *University of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517 (2013). Defendant, then, proposes that plaintiff, to survive summary judgment, must come forward with evidence from which a jury could determine that: (1) she engaged in protected activity; (2) after doing so, she was subjected to unwelcome harassment; (3) her protected activity was a "but for" cause of the harassment; and (4) the harassment was sufficiently severe or pervasive to alter the terms of her employment. As defendant highlights, this standard has been utilized by the Eleventh Circuit. *Baroudi v. Secretary, U.S. Department of Veterans Affairs*, 616 Fed. Appx. 899, 904 (11th Cir. 2015).

Plaintiff, on the other hand, contends that she need not prove that Mr. McHenry's conduct was severe or pervasive. Relying on this court's opinion in *Turrentine v. United Parcel Service, Inc.*, 645 F. Supp. 2d 976 (D. Kan. 2009), she asserts that this court has previously held that a plaintiff claiming retaliatory harassment need not show conduct that is severe or pervasive but only conduct that might dissuade a reasonable person from pursuing a charge of

discrimination. Defendant agrees with plaintiff's characterization of the *Turrentine* case but contends that the court's decision is "at odds" with the "severe or pervasive" requirement of harassment law. With respect to *Nassar*'s "but for" causation standard, plaintiff urges that *Nassar* does not apply to her claim because *Nassar* addressed only discrete retaliation claims rather than retaliatory harassment claims. Plaintiff, then, proposes that the court analyze her claim under the *McDonnell Douglas* burden-shifting framework that would require her to prove a prima facie case of retaliation as follows: (1) she engaged in protected activity; (2) defendant subjected plaintiff to conduct that may well have dissuaded a reasonable employee from making a charge of discrimination; and (3) that a causal nexus exists between plaintiff's protected activity and defendant's conduct.

To clarify the parties' obvious confusion about this court's decision in *Turrentine*, the court begins with a brief discussion of that case. Even the most cursory review of that case reveals that the court never adopted or espoused any particular standard that might govern retaliatory harassment claims. Rather, the primary issue concerning the plaintiff's retaliatory harassment claim was whether the plaintiff had preserved that claim in the pretrial order. *Turrentine*, 645 F. Supp. at 986. The court concluded that the plaintiff had preserved that claim as evidenced, among other things, by the plaintiff's articulation of the elements she believed she had to prove to satisfy her claim—elements that the court noted had been utilized by other courts in the context of analyzing retaliatory harassment claims. *Id.*[8] The court also noted that its ability to analyze the merits of the plaintiff's claim was limited because the defendant,

---

[8] In any event, the prima facie elements identified by the plaintiff in *Turrentine* are largely the same as the elements identified by the Tenth Circuit in *Somoza*.

apparently not recognizing that plaintiff had asserted a retaliatory harassment claim, had not moved for summary judgment on it. *Id*. at 987. Nonetheless, the court concluded that the evidence viewed in the light most favorable to the plaintiff was sufficient to permit a jury to conclude that she had suffered a "materially adverse action." *Id*.

In any event, a review of Tenth Circuit case law mandates the conclusion that the Circuit, in the context of analyzing a retaliatory harassment claim, follows the *McDonnell Douglas* burden-shifting framework. *See Somoza v. Univ. of Denver*, 513 F.3d 1206, 1212 (10th Cir. 2008); *Stover v. Martinez*, 382 F.3d 1064, 1070-75 (10th Cir. 2004); *Gunnell,* 152 F.3d at 1264 (assessing whether a campaign of harassment directed at the plaintiff constitutes "adverse action" for purposes of the second prong of the *McDonnell Douglas* analysis). That framework requires plaintiff to first establish a prima facie case of retaliation by showing that (1) she engaged in protected opposition to discrimination; (2) that a reasonable employee would have found the challenged action materially adverse; and (3) that a causal connection existed between the protected activity and the materially adverse action. *Somoza*, 513 F.3d at 1211-12 (analyzing whether the "hostile work environment" described by plaintiff satisfied the objective test of the second prong of the prima facie standard). The court, then, rejects defendant's suggestion that the *McDonnell Douglas* approach should not be used to analyze plaintiff's claim.

The court, however, does agree with defendant that the concepts of "severe" or "pervasive" conduct undisputedly must be considered in that analysis. But contrary to defendant's argument that the challenged conduct must be severe or pervasive to "alter the conditions of the victim's employment and create an abusive working environment," *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993), the conduct need only be sufficiently severe or pervasive

to constitute a "materially adverse" action; that is, the conduct must be sufficiently severe or pervasive that it could well dissuade a reasonable worker from engaging in protected activity. *See Burlington Northern & Santa Fe Ry. Co. v. White*, 546 U.S. 53, 57 (2006); *Somoza*, 513 F.3d at 1217-1219 (challenged conduct must be sufficiently pervasive or severe to rise to the level of a "materially adverse" action within the meaning of *Burlington Northern*). In other words, because *Burlington Northern* applies to retaliation claims analyzed under the *McDonnell Douglas* framework, and the Circuit analyzes retaliatory harassment claims under that same framework, the court must apply—as the Circuit has—the relaxed adverse-action standard set forth in *Burlington Northern* as opposed to the stricter standard applied in *Harris* to discriminatory harassment claims. *See Unal v. Los Alamos Pub. Schs.*, 638 Fed. Appx. 729, 743 (10th Cir. Jan. 29, 2016) (analyzing whether conduct such as "workspace relocation" supports a retaliation claim in light of the relaxed standard set forth in *Burlington Northern*).[9]

The last piece of this puzzle concerns the Supreme Court's decision in *Nassar*. As noted earlier, defendant suggests that the *Nassar* decision has heightened plaintiff's burden on summary judgment to prove that her protected activity is a "but for" cause of the challenged conduct. Plaintiff, on the other hand, urges that *Nassar* doesn't even apply in this context.

---

[9] The court recognizes that other judges in this District have utilized the *Harris* standard in evaluating retaliatory harassment claims. *See Nordike v. Verizon Business, Inc.*, 2014 WL 2533170, at *2 (D. Kan. June 5, 2014); *Melin v. Verizon Business, Inc.*, 2014 WL 978813, at *3 (D. Kan. Mar. 12, 2014). Those cases, in turn, have relied solely on the Tenth Circuit's decision in *McGowan v. City of Eufala*, 472 F.3d 736 (10th Cir. 2006). *McGowan* was decided after *Burlington Northern* but, without explanation or elaboration, analyzed whether the challenged retaliatory harassment constituted a "materially adverse action" by reference to the *Harris* standard. *McGowan* appears inconsistent with *Somoza* and, in the absence of any explanation within *McGowan* concerning the reference to the *Harris* standard, the court treats that reference as an oversight on the part of the Circuit.

Neither party is correct. Because the Circuit analyzes retaliatory harassment claims within the context of the *McDonnell Douglas* framework applicable to discrete retaliation claims, the Circuit would clearly apply *Nassar* to such claims, just as it applies *Burlington Northern* to such claims. However, the Circuit has also recognized that *Nassar* has not altered the burden a plaintiff bears in supporting the causation element of a prima facie case of retaliation because *Nassar* was entirely consistent with the Circuit's precedent on that issue. *See Foster v. Mountain Coal Co.*, 830 F.3d 1178, 1191 (10th Cir. 2016) (citing *Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014)).

Having determined the appropriate framework and standards for analyzing plaintiff's claim of retaliatory harassment, the court turns to the parties' specific arguments concerning plaintiff's claim. It is undisputed that plaintiff engaged in protected activity by initiating her first formal EEO complaint in October 2010 (a complaint that was filed in January 2011 and settled in March 2011) and by initiating another EEO complaint in January 2012 (a complaint that was filed in May 2012). In addition, the evidence suggests that plaintiff lodged several internal complaints through defendant's complaint process about Mr. McHenry's conduct. With respect to the second prong of plaintiff's prima facie case, defendant contends that plaintiff has not shown conduct sufficiently "severe or pervasive" to alter the terms of her employment and create an abusive working environment—a standard that the court has rejected. Under the broader standard utilized by the Circuit in *Somoza*, the issue is whether plaintiff has shown conduct sufficiently severe or pervasive such that it could well dissuade a reasonable worker

from pursuing a charge of discrimination.[10]  Viewed in the light most favorable to plaintiff, the evidence is sufficient to permit a jury to conclude that Mr. McHenry's conduct, when considered in the aggregate, could dissuade a reasonable worker from pursuing a charge of discrimination. Plaintiff's evidence suggests that Mr. McHenry singled plaintiff out for heightened scrutiny— that he observed her on her route and followed her on her route far more than he observed or followed other carriers.  She contends that he routinely criticized her work performance through job discussions or pre-disciplinary interviews over minor or nonexistent flaws and that he did so in the presence of her coworkers rather than through a private discussion.  She points to nearly twenty-five (25) job discussions or pre-disciplinary interviews that she received over the course of roughly 18 months following her first EEO complaint.  She contends that he unreasonably denied her leave requests and required her to submit medical documentation to support sick leave requests.  She contends that Mr. McHenry interrupted her breaks, threw mail in her direction, and followed her on her lunch breaks.  While defendant describes most of these incidents as "unremarkable, trivial harms" that Mr. McHenry cannot even recall, a reasonable jury could conclude otherwise.

Defendant also suggests that summary judgment is appropriate on plaintiff's claim because she cannot establish "but for" causation under *Nassar*.  Because the court has already

---

[10] Defendant contends that plaintiff fails to meet this standard because she was never deterred from engaging in EEO activity.  While the fact that an employee continues to be undeterred in his or her pursuit of a remedy "may shed light as to whether the actions are sufficiently material and adverse to be actionable," *Somoza*, 513 F.3d at 1214, the "reasonable worker" standard is an objective test that focuses on how a reasonable employee would have interpreted or responded to the conduct, not on the particular plaintiff's response to it.  *See Daniels v. United Parcel Service, Inc.*, 701 F.3d 620, 638 (10th Cir. 2012).  The court, then, rejects defendant's suggestion that summary judgment is appropriate simply because plaintiff was undeterred in her pursuit of EEO activity.

rejected the notion that *Nassar* has heightened plaintiff's burden on summary judgment, the court analyzes plaintiff's causation evidence under established Tenth Circuit precedent. Thus, where protected activity is closely followed by an adverse employment action, temporal proximity alone is sufficient to establish causation at the prima facie stage. *Foster*, 830 F.3d at 1191. Where a considerable length of time has elapsed between protected activity and an adverse employment action, a plaintiff must present "additional evidence" tying the adverse action to the protected activity. *Id.* Bearing this standard in mind, a reasonable jury could conclude that plaintiff was targeted for harassment and increased scrutiny because of her EEO activity.

Plaintiff filed her first formal EEO complaint on January 15, 2011 and Mr. McHenry was undisputedly aware of that complaint. Less than six weeks later, on February 24, 2011, plaintiff received a job discussion at Mr. McHenry's direction about spending less time talking to her co-workers.[11] Four days later, Mr. McHenry "forced" her to deliver 550 phone books in one day, along with her regular deliveries. From there, plaintiff's evidence reflects consistent and repeated job discussions about a host of issues as well as disputes with Mr. McHenry about leave requests, leave documentation and leave pay and a purported increase in occasions on which Mr. McHenry followed or observed plaintiff on her route. Viewed in the light most favorable to plaintiff, this pattern of increased antagonism immediately following plaintiff's complaint is sufficient to establish causation.

---

[11] While plaintiff's claim for damages covers the period from March 2011 through September 2012, defendant does not dispute that the court may consider evidence of incidents outside that time period for purposes of assessing the viability of plaintiff's claim.

Defendant argues that any inference of retaliatory motive is necessarily dispelled by the fact that plaintiff complained about similar conduct regarding Mr. McHenry prior to her EEO activity. But the evidence on which defendant relies in support of this assertion does not necessarily demonstrate that Mr. McHenry, as opposed to another supervisor, was responsible for the conduct about which plaintiff complained. Defendant, for example, directs the court to evidence that plaintiff received a job discussion in August 2010 about mishandling her "hot case" mail. That evidence suggests that someone named "Sandy" gave plaintiff a job discussion and Mr. McHenry's involvement is unclear. Defendant also directs the court to evidence concerning an October 2010 incident in which Mr. McHenry reprimanded plaintiff for breaking the mirror on her vehicle. But by that time, plaintiff had already initiated her EEO complaint and it may be that Mr. McHenry had knowledge of the complaint at the time he reprimanded her about the mirror—the record is unclear on that issue. But even if Mr. McHenry had on occasion reprimanded plaintiff prior to her EEO activity, a jury must still resolve plaintiff's claim. To be sure, a jury might well conclude that Mr. McHenry, prior to plaintiff's EEO activity, treated plaintiff in the same manner as he treated her after her EEO activity and determine from that evidence that no inference of retaliation is warranted. But a jury could also conclude that Mr. McHenry's conduct began to escalate after her complaint such that a causal connection exists. Accordingly, defendant's motion for summary judgment on plaintiff's retaliatory harassment claim is denied.[12]

---

[12] Because defendant does not believe that the *McDonnell Douglas* analysis applies to plaintiff's claim, she has not articulated a legitimate, non-retaliatory reason for the challenged conduct. The court, then, does not address the remaining two steps of the *McDonnell Douglas* framework.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. 60) is granted in part and denied in part.

**IT IS SO ORDERED.**

Dated this 2nd day of June, 2017, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge